## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BENJAMIN SNIPES,

      Plaintiff,

v.

WORKCO, INC. d/b/a TOKU,

      Defendant.

C.A. No. 2026-0110-CDW

## REPORT DENYING THE PARTIES'
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Date Submitted: March 30, 2026
Date Decided: May 12, 2026

Margaret M. DiBianca, Ann C. Cordo, DIBIANCA LAW, LLC, Wilmington, Delaware; *Counsel for Plaintiff Benjamin Snipes*

Michael A. Barlow, Gates H. Young, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, Delaware; *Counsel for Defendant WorkCo, Inc. d/b/a Toku*

**WRIGHT, M.**

A former high-level employee of a Delaware corporation seeks advancement of the unpaid portion of fees and expenses he incurred in defending litigation filed against him by the corporation, which resolved while this action was pending. The corporation argues that resolution of the underlying proceeding moots the plaintiff's advancement claim, and that even if the claim is not moot plaintiff is not entitled to advancement because he did not serve in a role for which the corporation's bylaws provide advancement. On the parties' cross-motions for summary judgment, I conclude that resolution of the underlying action did not moot this action, and that there is a genuine issue of material fact whether the former employee occupied a covered position. I deny the cross-motions.

## I.    FACTUAL BACKGROUND

I begin by describing the parties and the advancement rights granted under Toku's bylaws, before turning to the events in the underlying litigation and this case.

### A.    The Parties

Plaintiff Benjamin Snipes is an attorney who served as the "Head of Legal" for defendant WorkCo, Inc., d/b/a Toku ("Toku") from June 2023 to

July 12, 2024.[1]  Toku is a Delaware corporation with its principal place of business in Wilmington, Delaware.[2]

## B.     Advancement Rights Under Toku's Bylaws

Toku's bylaws grant broad advancement rights to its current and former directors and officers.  Sections 6.1 and 6.3 deal with advancement rights. Section 6.1 outlines who is entitled to advancement and indemnification:

> [Toku] shall, to the maximum extent and in the manner permitted by the Delaware General Corporation Law, indemnify each of its directors and officers against expenses (including attorneys' fees), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any proceeding, arising by reason of the fact that such person is or was an agent of the corporation. For purposes of this Section 6.1, a "director" or "officer" of the corporation includes any person (a) who is or was a director or officer of the corporation, (b) who is or was serving at the request of the corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was a director or officer of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.[3]

Section 6.3 specifically articulates a right to advancement:

> Expenses incurred in defending any action or proceeding for which indemnification is required

---

[1] Verified Compl. for Advancement ¶ 4, Dkt. 1 ("Compl."); Def.'s Answer to the Compl. ¶ 4, Dkt. 15 ("Ans."); Pl.'s Opening Br. in Supp. of His Mot. for Summ. J. at 3, Dkt. 16 ("Pl.'s Opening Br.").

[2] Compl. ¶ 5; Ans. ¶ 5.

[3] Compl., Ex. B ("Bylaws") § 6.1.

pursuant to Section 6.1 or for which indemnification is permitted pursuant to Section 6.2 following authorization thereof by the Board of Directors shall be paid by the corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnified party is not entitled to be indemnified as authorized in this Article VI.[4]

The bylaws define "officers" as a president, secretary, chief executive officer, chief financial officer, treasurer, one or more vice presidents, one or more assistant secretaries and treasurers, and "any such other officers as may be appointed in accordance with the provisions of Section 5.3 of these bylaws."[5] "Subordinate Officers" are appointed under Section 5.3 by Toku's board or by the chief executive officer if the board empowered them to do so.[6] Section 6.1 clarifies that the rights to advancement and indemnification extend to "any person who . . . is or was a director or officer[.]"[7]

While the Bylaws do not define "proceeding," Toku's certificate of incorporation elaborates on the term. The certificate grants indemnification

---

[4] Bylaws § 6.3.

[5] *Id.* § 5.1.

[6] *Id.* § 5.3.

[7] *Id.* § 6.1.

rights for "action[s] or proceeding[s], whether criminal, civil, administrative or investigative[.]"[8]

## C.    Toku Sues Snipes

On December 20, 2024, Toku filed an action in this court against Snipes and one of Toku's competitors, LiquiFi, Inc., relating to Snipes' departure from Toku to become General Counsel at LiquiFi.[9]  The complaint alleges Snipes took confidential and privileged Toku information with him to LiquiFi, and in doing so (1) breached Confidentiality and Non-Disclosure Agreements[10] he signed with Toku, (2) violated the Delaware Uniform Trade Secrets Act, and (3) breached his fiduciary duties as "one of Toku's key high-level employees."[11]  The complaint also alleges that Snipes tortiously interfered with Toku's prospective customers and violated the Delaware Deceptive Trade Practices Act by making false, misleading, and disparaging statements about Toku and its business.[12]  Toku also asserted the Delaware Uniform Trade Secrets Act, tortious interference, and Delaware Deceptive Trade Practices Act

---

[8] Compl. Ex. A § 8(B).

[9] Verified Compl., *WorkCo, Inc. d/b/a Toku v. LiquiFi, Inc.*, C.A. No. 2024-1334-JTL (Del. Ch.) ("Underlying Action"), Dkt. 1 ("Underlying Action Compl.").

[10] *See* Unsworn Transmittal Decl. of Gates H. Young Pursuant to 10 *Del. C.* § 3927 in Support of Def.'s Answering Br. in Opp'n to Pl. Benjamin Snipes's Mot. for Summ. J., Dkt. 23, Exs. 21–22.

[11] Underlying Action Compl. ¶¶ 100–135.

[12] *Id.* ¶¶ 136–147, 159–166.

claims against LiquiFi and added claims for unjust enrichment and aiding and abetting breach of fiduciary duty.[13]

**D.      Snipes Seeks Advancement and the Underlying Action Winds Down**

On December 11, 2025, Snipes served a written demand for advancement of expenses he had incurred to date defending the Underlying Action, with an undertaking to repay any amounts advanced for which he is not entitled to indemnification.[14]  During this time, Toku, Snipes, and LiquiFi engaged in negotiations to settle the Underlying Action.[15]

On January 23, 2026, Snipes filed the Complaint.[16]  The Complaint asserts three counts against Toku:  (1) to compel Toku to advance Snipes' fees and expenses under its bylaws;[17] (2) to compel Toku to advance Snipes' fees under its certificate of incorporation;[18] and (3) for payment of fees-on-fees incurred in this advancement action.[19]

---

[13] *Id.* ¶¶ 115–130, 136–172.

[14] Compl. ¶ 17; *id.* Ex. D; Pl.'s Opening Br. 6.

[15] *See* Def.'s Mot. for Summ. J. ¶ 17, Dkt. 16 ("Def.'s Mot."); Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ¶ 8, Dkt. 22 ("Pl.'s Resp.").

[16] Dkt. 1.

[17] Compl. ¶¶ 20–24.

[18] *Id.* ¶¶ 25–30.  While the complaint raises a count for advancement under Toku's certificate of incorporation, the certificate only grants mandatory indemnification rights—it does not contain a right to advancement.  *See id.* Ex. A Art. VIII. "Although the right to indemnification and advancement are correlative, they are separate and distinct[.]" *E.g.*, *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005).  Snipes also does not argue in briefing that the certificate confers a right to

- 5 -

On January 30, Toku offered to dismiss the Underlying Action without prejudice.[20] In its offer, Toku represented that, as part of a proposed settlement, LiquiFi agreed to pay to pay Snipes' attorney fees up to January 30, and asked Snipes to provide his invoices to date so Toku could calculate the settlement value.[21] Three days later, Snipes' counsel contacted Toku's counsel with the total amount of fees Snipes incurred in the Underlying Action and this suit.[22] Snipes' counsel also informed Toku that "unless the [U]nderlying [A]ction is resolved such that Mr. Snipes is no longer being sued or threatened with suit" he believed these advancement proceedings should continue, but was still open to settling the Underlying Action.[23] On February 6, Snipes' counsel followed up on her initial response by attaching invoices through February 5.[24]

---

advancement. *See, e.g.*, Dkt. 16 at 9–13. "Issues not briefed are deemed waived." *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999). I do not analyze Toku's certificate of incorporation in depth because it does not affect my analysis of the issues before me, and Snipes waived that argument by not raising it in his briefs.

[19] Compl. ¶¶ 31–33.

[20] Def.'s Mot. ¶ 19; Def's Answering Br. in Opp'n to Pl.'s Mot. for Summ. J. 9, Dkt. 23 ("Def.'s Answering Br.").

[21] Def.'s Mot. ¶ 19; *see* Pl.'s Resp. ¶ 8.

[22] Def.'s Mot. ¶¶ 20–21; Unsworn Transmittal Decl. of Gates H. Young Pursuant to 10 *Del. C.* § 3927 in Support of Def.'s Mot. for Summ. J., Dkt. 17 ("First Young Decl."), Ex. 17 (email from Snipes' counsel with fee calculations).

[23] First Young Decl., Ex. 16.

[24] Def.'s Mot. ¶ 22; First Young Decl., Ex. 18.

On February 13, LiquiFi and Toku settled the Underlying Action,[25] and LiquiFi was formally dismissed as a defendant on March 9.[26] As part of the settlement, LiquiFi agreed to pay Snipes' fees and expenses in the Underlying Action and this action through February 5.[27] Later that day, Toku informed Snipes that it intended to move to dismiss its claims in the Underlying Action against him without prejudice.[28] Toku filed that motion on February 20.[29] Snipes opposed the dismissal on March 10.[30] On March 24, Vice Chancellor Laster dismissed the Underlying Action without prejudice, but with a significant restriction:

> Toku cannot refile its claims in any forum unless either (1) Snipes files a lawsuit against Toku (other than his advancement claim) or (2) Toku uncovers evidence of Snipes' use—not mere possession—of its confidential information or trade secrets in connection with an incident that was not the subject of discovery in [the Underlying Action].[31]

---

[25] Def.'s Mot. ¶ 23; Pl.'s Resp. ¶ 8.

[26] Underlying Action, Dkt. 239.

[27] Def.'s Mot. ¶ 23; Pl.'s Resp. ¶ 8. LiquiFi has paid Snipes' fees and expenses through February 5. *Id.* ¶ 8.

[28] Def.'s Mot. ¶ 23; Pl.'s Resp. ¶ 8.

[29] Pl.'s Mot. to Dismiss Against Def. Snipes Without Prejudice Pursuant to Ct. Ch. R. 41(a)(2), Underlying Action, Dkt. 234.

[30] *See* Def. Snipes' Resp. in Opp'n to Pl.'s Mot. to Dismiss Without Prejudice, Underlying Action, Dkt. 240.

[31] Underlying Action, Dkt. 245.

While the Underlying Action was winding down, Snipes and Toku briefed their cross-motions for summary judgment for summary judgment on Snipes' entitlement to advancement.[32]  On March 30, the court heard oral argument on the cross-motions.[33]

## II.    ANALYSIS

As the party seeking advancement, Snipes bears the burden to demonstrate, by a preponderance of the evidence, that he is entitled to advancement.  *Gilbert v. Unisys Corp.*, 2024 WL 3789952, at *8 (Del. Ch. Aug. 13, 2024) (citing *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 463–64 (Del. Ch. 2008)).  "Proof by a preponderance of the evidence means proof that something is more likely than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not." *Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *13 (Del. Ch. Feb. 18, 2010) (quotation omitted).

The parties have cross-moved for summary judgment under Court of Chancery Rule 56(c), under which a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

---

[32] Dkts. 16–17, 22–23, 26–27.

[33] Dkt. 36.

genuine issue as to any material fact." *Baring v. Condrell*, 2004 WL 5389666, at *3 (Del. Ch. Oct. 18, 2004).

Generally, the court must view the evidence in the light most favorable to the non-moving party. *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992). When the parties have cross-moved for summary judgment and have not presented argument to the court that there is an issue of fact material to the disposition of either motion, the court deems the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions. Ct. Ch. R. 56(h). "Nevertheless, 'even when presented with cross-motions for summary judgment, a court must deny summary judgment if a material factual dispute exists.'" *Stempien v. Marnie Properties, LLC*, 2019 WL 1224557, at *2 (Del. Ch. Feb. 11, 2019) (quoting *Bank of N.Y. Mellon v. Realogy Corp.*, 979 A.2d 1113, 1119 (Del. Ch. 2008)).

Snipes contends he is entitled to advancement under Toku's bylaws because, as "Head of Legal," he was an officer under the bylaws, that he was made a party to the Underlying Action by reason of his position with Toku, and the bylaws impart a mandatory obligation on Toku to advance his unpaid legal fees and expenses.[34] Toku argues it has no duty to pay Snipes' fees because the Underlying Action was dismissed, rendering Snipes' advancement claim moot. Alternatively, if these proceedings are not moot, Toku maintains that Snipes is

---

[34] *See generally* Pl.'s Opening Br.; Pl.'s Answering Br.; Pl.'s Reply.

not entitled to advancement because he was never an officer as defined in the bylaws. Even if Snipes was entitled to payment, Toku asserts that LiquiFi has paid all of the fees Snipes incurred in the Underlying Action and the remaining amount he seeks from Toku are "manifestly unreasonable."[35]

I begin with a brief discussion of the law surrounding advancement to frame my analysis of the parties' motions. Then I address Toku's contention that this advancement action is moot. I conclude my analysis by determining whether Snipes is entitled to advancement under Toku's bylaws.

## A. The Law of Advancement

"Rights to indemnification and advancement are deeply rooted in the public policy of Delaware corporate law in that they are viewed less as an individual benefit arising from a person's employment and more as a desirable mechanism to manage risk in return for greater corporate benefits." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 509 (Del. 2005). Section 145 of the Delaware General Corporation Law ("DGCL")[36] provides the "statutory framework for when and how a corporation may provide advancement [and indemnification rights] to an officer, director, employee, or agent of the corporation." *Sassano*, 948 A.2d at 460 (citing 8 *Del. C.* § 145).

> Section 145 serves the dual policies of: (a) allowing corporate officials to resist unjustified lawsuits,

---

[35] Def.'s Answering Br. 12.

[36] 8 *Del. C.* §§ 101–398.

secure in the knowledge that, if vindicated, the corporation will bear the expense of litigation; and (b) encouraging capable women and men to serve as corporate directors and officers, secure in the knowledge that the corporation will absorb the costs of defending their honesty and integrity.

*VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 84 (Del. 1998).

Section 145(e) empowers a corporation to pay the expenses and attorney fees incurred by a current or former officer or director in defending against a lawsuit or other similar proceeding, "upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in" Section 145. 8 *Del. C.* § 145(e). "In other words, a right to advancement is, effectively, a loan." *Gilbert*, 2024 WL 3789952, at *8 (citing *Advanced Min. Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992)). "Advancement is 'purely permissive,' but many Delaware corporations 'provide for mandatory advancement as an enticement to attract qualified individuals to serve as directors and officers.'" *Id.* at *9 (quoting *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *7 (Del. Ch. Dec. 23, 2014)).

A corporation may grant advancement rights in its governing documents or by separate contract. *See* 8 *Del. C.* § 145(f). "'General rules of contract interpretation apply when construing the provisions of a company's charter or bylaws.'" *Centrella v. Avantor, Inc.*, 2024 WL 3249274, at *5 (Del. Ch. July 1,

2024) (quoting *Krauss v. 180 Life Scis. Corp.*, 2022 WL 665323, at *3 (Del. Ch. Mar. 7, 2022)). "Delaware adheres to the 'objective' theory of contracts, *i.e.* a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quotation omitted). "When a contract is clear and unambiguous, the court 'will give effect to the plain-meaning [sic] of the contract's terms and provisions.'" *Gilbert*, 2024 WL 3789952, at *8 (quoting *Osborn*, 991 A.2d at 1159–60). "This approach places great weight on the plain terms of a disputed contractual provision, and [Delaware courts] interpret clear and unambiguous terms according to their ordinary meaning. [Delaware courts] do not consider extrinsic evidence unless [they] find that the text is ambiguous." *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 760 (Del. 2022) (quotation and citations omitted). Finally, contract language "is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

With this framing in mind to guide my analysis, I now turn to the parties' arguments.

## B. Dismissal of the Underlying Action Does Not Moot Snipes' Advancement Claim in This Action

Toku's assertion that Snipes' advancement claim is moot has two parts. First, Toku contends that the Underlying Action reached a "final disposition" in February when Toku informed Snipes it intended to dismiss its claims against him,[37] and, therefore, Snipes was not "defending" the Underlying Action after that date, even if the proceeding did not formally conclude.[38] Second, Toku posits that because LiquiFi has paid Snipes' fees incurred through February 6, and the Underlying Action concluded, there is nothing left for the court to grant.[39] Toku concludes that, together, these facts render Snipes' advancement claim moot. Snipes counters that he was still "defending" claims the Underlying Action until it was dismissed several weeks later in March.[40]

Delaware law does not have a definitive answer as to when an advancement proceeding is rendered moot, but this is not the first time the court has confronted this question. I begin this section with discussions of *Haseotes v. Cumberland Farms, Inc.*,[41] *Underbrink v. Warrior Energy Services Corp.*,[42]

---

[37] Def.'s Answering Br. 10–13; Tr. of Oral Arg. on Cross-Mots. for Summ. J. ("Tr.") 8, 25–26, Dkt. 30.

[38] *See* Def.'s Mot. ¶¶ 27–33; Def.'s Reply ¶¶ 6–10; Tr. 38.

[39] Def.'s Mot. ¶¶ 35–38; Def.'s Reply ¶ 13; *see* Tr. 8–9; Def.'s Answering Br. 20.

[40] Pl.'s Resp. ¶¶ 12–15; Pl.'s Reply Br. 1–3.

[41] C.A. No. 14921 (Del. Ch. July 23, 1996) (TRANSCRIPT) ("*Haseotes* Tr.").

[42] 2008 WL 2262316 (Del. Ch. May 30, 2008).

*Seiff v. Tokenize, Inc.*,[43] and *Invictus Special Solutions Master I., L.P. v. Invictus Global Management, LLC*,[44] where the court evaluated similar mootness arguments. Using the framing of the cases, I then address each part of Toku's argument. First, I determine the date Snipes stopped "defending" the Underlying Action. Then, using that date, I address whether Snipes incurred advanceable fees that LiquiFi has not paid.

### 1. Mootness is a Fact-Specific Determination

In *Haseotes*, the plaintiff sought advancement and indemnification for four underlying actions. *Haseotes* Tr. 13–16. Two of the proceedings for which the plaintiff demanded advancement reached a final judgment before the court convened a hearing on the plaintiff's entitlement to advancement. *Id.* 13–16, 37–38. The first was a tax proceeding where the Massachusetts court entered judgment against the plaintiff. *Id.* 46. The second was an adversarial bankruptcy action which was dismissed by stipulation without prejudice. *Id.* 27, 50. The defending company argued that the plaintiff's need for advancement was mooted because both proceedings reached their final disposition, and that the plaintiff should have to seek indemnification at that point. *Id.* 41–47.

---

[43] 2020 WL 6791233 (Del. Ch. Nov. 19, 2020).

[44] C.A. No. 2023-1099-NAC (Del. Ch. Sep. 9, 2024) (TRANSCRIPT) ("*Invictus* Tr.").

The court agreed with the company as to the tax proceeding, but ordered it to advance fees related to the bankruptcy. As the court reasoned, while "a literal or technical reading of the company's bylaw would permit advancement" after an action reached its final disposition, "it would defeat the purpose of the advancement [and] indemnification statute to" find for the plaintiff on the tax action. *Id.* 79. In so doing, the court held that the plaintiff's claim related to the tax should be denied because "there [was] nothing at [that] point to advance"[45] and the court should not "force the company to perform what may be a useless act; that is to pay out advance indemnification where the nature of the judgment itself suggests that it may not be ultimately indemnifiable." *Id.* 80. The court distinguished the tax action from the bankruptcy action, because the bankruptcy action's dismissal was effectively in the plaintiff's favor and there was no equitable basis to deny advancement. *See id.* 49–50, 81.

A similar question was presented in *Underbrink*. In *Underbrink*, the plaintiffs sought advancement for several counts in an underlying action that were decided favorably. 2008 WL 2262316, at *5–6, *15. The defending corporation argued that, under the court's ruling in *Haseotes*, the plaintiffs' "claim to recover their expenses" for the dismissed counts in the underlying action "is moot and properly should be made in an indemnification action." *Id.* at *15. The court found the facts distinguishable from *Haseotes*, because the

---

[45] *Haseotes*, C.A. No. 14921 at 78.

case was "not a situation where a [covered person] is seeking advancement of expenses for litigation which he has lost" and "[i]t would be inequitable to deny advancement to [the plaintiffs] because they ultimately succeeded in portions of the [underlying action] shortly before the conclusion of this advancement action." *Id.* at *15.

In *Seiff*, the defending company filed suit against the plaintiff, a director, in New York for breaches of fiduciary duties. 2020 WL 6791233, at *2. The plaintiff served his advancement demand on the company less than a week later, then moved to dismiss the New York action shortly after. *Id.* at *2–3. The company amended its New York complaint less than three weeks later, before voluntarily dismissing the lawsuit, without prejudice, before serving the amended complaint. *Id.* at *2.

After the company failed to respond, the plaintiff filed the advancement case. *Id.* at *3. The company argued that because it dismissed the New York action, the advancement claim was moot, and the plaintiff must sue for indemnification. *Id.* at *4. As the court concluded, because the explicit terms of the relevant advancement provision entitled plaintiff to fees requested "after final disposition" of a covered proceeding, the plaintiff was entitled to advancement, and the court did not need to address the equitable concerns raised in *Haseotes* and *Underbrink*. *Id.*

- 16 -

Most recently, the court answered this question in *Invictus* when resolving the parties' cross-motions for summary judgment. The counterclaim-plaintiffs in *Invictus* sought advancement of their fees and expenses for three underlying proceedings and fees-on-fees in the advancement proceeding. *Invictus* Tr. 6. The company maintained that under Section 145 "if an advancement demand or proceeding is pending but unresolved before the underlying action is resolved, then that advancement request becomes moot." *Id.* 19.

In its analysis, the *Invictus* court sought to harmonize the conclusions reached in *Haseotes*, *Underbrink*, and *Seiff* with Section 145 and Delaware's strong public policy favoring advancement rights. *Id.* 14–19. The court held that if an underlying action concludes while advancement proceedings are ongoing, then a defending company must pay "sums owed that have not been paid[,]" but a final disposition could "cut off the [covered person's] ability to incur further advanceable sums for that particular proceeding[.]" *Id.* 20. In so doing, the court rejected the company's argument that Section 145 rendered any pending advancement claims for concluded proceedings moot. *Id.* 19. The court explained it was not precluded from imposing limitations on equitable grounds, such as when a plaintiff delayed in seeking advancement until well after the underlying proceeding resolved, or if the individual "lost the

- 17 -

underlying action in an obviously non-indemnifiable way." *Id.* 21. With this framing in mind, I now address the parties' contentions.

### 2. Snipes Was Defending the Underlying Action Until It Was Dismissed on March 24

Toku argues Snipes was no longer "defending" the Underlying Action once he rejected Toku's offer to dismiss the Underlying Action without prejudice on February 2.[46] Toku says a plain reading of the bylaws compels this because a dismissal without prejudice concludes the Underlying Action. Alternatively, Toku reasons that because the Underlying Action went away and advancement rights under Toku's bylaws are ripe only if the covered person is defending a proceeding, there is "no action or proceeding to defend against."[47] Thus, Toku concludes, his advancement claim is stale and "there is nothing left for this [c]ourt to order."[48] Snipes maintains that Toku's conclusion is "plainly wrong" because the Underlying Action did not conclude until March and he incurred additional, unpaid fees from the date of Toku's settlement offer to the date of dismissal.[49]

To determine what the drafters of corporate bylaws intended, "Delaware courts start with the text. And if the text is unambiguous, Delaware courts end

---

[46] Tr. 20–22, 28–31; Def.'s Reply ¶¶ 5–10; *see* Def.'s Mot. ¶¶ 30–33, 39–43; Def.'s Answering Br. 10–14. *See also* Tr. 24–26.

[47] Tr. 26.

[48] Def.'s Mot. ¶ 29.

[49] Pl.'s Answering Br. 1–2.

there too." *Gunderson v. Trade Desk, Inc.*, 326 A.3d 1264, 1280 (Del. Ch. 2024) (quotation and citation omitted); *see, e.g.*, *Gentile v. SinglePoint Fin., Inc.*, 788 A.2d 111, 113 (Del. 2001) (citation omitted). Section 6.3 of the bylaws is unambiguous. Section 6.3 grants indemnitees advancement for "[e]xpenses incurred in defending any action or proceeding."[50] Defend is defined as "[t]o deny, contest, or oppose an allegation or claim[.]" *Defend*, BLACK'S LAW DICTIONARY (12th ed. 2024). *Merriam-Webster* expands on this, defining the word in a legal context as "to deny or oppose the right of a plaintiff in regard to a suit or wrong charged."[51] Delaware courts interpret the term broadly in the advancement context, holding that actions taken to "defeat or offset" the claims or allegations raised are within the definition of "defending." *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992); *see also Sun-Times Media Gp., Inc. v. Black*, 954 A.2d 380, 397–98 (Del. Ch. 2008). Read plainly, Section 6.3 entitles an indemnitee to advancement of expenses incurred in denying, contesting, opposing, defeating, or offsetting allegations, claims, or rights of the opposing party in any proceeding to which they are involved because of their corporate status.

Toku cites no authority to support its contention that once it offered to dismiss the Underlying Action without prejudice, Snipes could no longer be

---

[50] Bylaws § 6.3.

[51] *Defend*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/defend (last visited April 20, 2026) (parentheses omitted).

"defending" the Underlying Action because Toku was no longer prosecuting it.[52]  The record in the Underlying Action makes clear that a settlement was not guaranteed when Toku offered to dismiss the Underlying Action without prejudice on January 30.  The parties were still negotiating a briefing schedule on LiquiFi's request to move for summary judgment, and Snipes was actively seeking leave to move for summary judgment, which the court later granted, all in the 21 days from Toku's settlement offer to when it moved to dismiss.[53]  I am also satisfied Snipes was still defending the Underlying Action when he opposed Toku's without-prejudice dismissal—the order granting dismissal attaches significant conditions to Toku's ability to reassert claims against Snipes.  Because I conclude that Snipes was defending the claim beyond February 6, I find that there are still outstanding fees and expenses to which Snipes may be entitled.[54]  Thus, I reject Toku's contention there is "nothing left" to award Snipes because LiquiFi has paid all of the fees Snipes incurred before February 6.

Finally, Toku has not demonstrated there is an equitable basis to preclude Snipes' advancement claim.  Snipes served his demand while the Underlying

[52] Def.'s Mot. ¶¶ 31–33; Def.'s Answering Br. 10–11; Def.'s Reply ¶¶ 6–7; *see* Tr. 25–29.

[53] *See* Underlying Action, Dkts. 229–34.

[54] At argument, Snipes' counsel confirmed that the amount at issue as of March 30, after deducting the fees and expenses reimbursed by LiquiFi, is approximately $1,000. *See* Tr. 40–41.

Action was still ongoing (weeks before Toku alleges it committed to dismiss its claims against him), the bylaws do not establish a deadline for an indemnitee to serve an advancement demand on Toku, and the Underlying Action's disposition is not obviously unindemnifiable. Therefore, I find that this advancement proceeding is not moot.

## C. A Genuine Issue of Material Fact Exists Regarding Snipes' Officer Status

In addition to its mootness argument, Toku argues Snipes is not entitled to advancement because he is not an "officer" under Toku's bylaws.[55] Toku asserts Snipes "was never appointed to any of the 'officer' roles listed" in the bylaws, nor was he "appointed to a 'subordinate officer' role" through the process in the bylaws.[56] Toku contends that because the bylaws only grant mandatory advancement rights to officers the listed officers or properly appointed subordinate officers, Snipes is not entitled to advancement.[57]

Snipes counters that Vice Chancellor Laster held in the Underlying Action that Snipes was an officer of Toku, and his ruling there forecloses Toku's argument here.[58] Snipes also maintains that Toku cannot contest his

---

[55] Def.'s Answering Br. 14–16; Def.'s Reply ¶ 5; Tr. 9–15.

[56] Def.'s Answering Br. 14.

[57] Def.'s Answering Br. 14–16; Tr. 18–20.

[58] Pl.'s Resp. ¶ 11.

officer status here when, in the Underlying Action, Toku contradictorily alleged Snipes was an officer.[59]

Upon careful review of the record before me, I cannot determine if Snipes is an "officer" within the meaning of Toku's bylaws. Snipes was hired as Toku's Head of Legal.[60] At oral argument, Toku stated that Snipes was hired "through the usual mechanisms" by executing an employment contract, and that Snipes was not appointed by Toku's board of directors.[61] Toku also submitted an affidavit from its CEO that claims none of Toku's board of directors, its President, or himself appointed Snipes to "any officer role pursuant to Toku's [b]ylaws or to a subordinate officer role as defined" in the bylaws.[62]

Toku also elaborated that Snipes' employment contract was signed by Toku's CEO, but still maintains that an employment contract is "not appointing [Snipes] to . . . a subsidiary officer position under" the bylaws.[63] Toku's position is that, even if its CEO hired Snipes and executed his employment contract, that is not an "appointment" under its bylaws. Toku says the bylaws

---

[59] *See* Pl.'s Resp. ¶ 11; Pl.'s Reply 6–9; Tr. 37–39.

[60] Pl.'s Opening Br. 1–2; Pl.'s Resp. ¶ 11; Def.'s Answering Br. 2, 5, 15–16.

[61] Tr. 14–15.

[62] Unsworn Dec. of Kenneth O'Friel, Dkt. 23.

[63] Tr. 16.

require Toku's board either to appoint an individual to a subsidiary officer role, or to create the officer role and authorize the President or CEO to fill it.[64]

Snipes' evidence does not provide much clarity either. In his papers, Snipes relies only on Toku's allegations and Vice Chancellor Laster's determination that Snipes was a *de facto* officer for purposes of Section 3114 of Title 10 of the Delaware Code.[65] At argument, Snipes' counsel continued to rely on Toku's allegations in the Underlying Action.[66] To counter Toku's procedural argument, Snipes asserted that Toku is a small company, where the two founders "seemed to hold all powers relevant to" Toku.[67] But counsel could not definitively comment on Toku's general adherence to the corporate formalities that form the foundation of its argument, and there is no other evidence in the record from which I can confidently make that determination myself.[68] Snipes also contends that I should disregard the affidavit Toku submitted because it contradicts prior sworn testimony and Toku offered it only to "create a material dispute of fact in response to" his motion for summary judgment.[69]

---

[64] *See* Tr. 17.

[65] *See* Compl. ¶¶ 2, 8–9, 14, 16; Pl.'s Opening Br. 1–2, 4–6; Pl.'s Resp. ¶ 11; Pl.'s Reply 6–9.

[66] Tr. 37–39.

[67] Tr. 40.

[68] *See* Tr. 40–41.

[69] Pl.'s Reply 8–9; Tr. 38.

Toku counters that Snipes' status as a *de facto* officer under Section 3114 only goes to his entitlement to mandatory indemnification under Section 145(c).[70] Toku reasons that the legislature's choice to include reference to Section 3114 in Section 145(c) but not Section 145(e) implies that the legislature intended to leave corporations discretion in deciding who to grant advancement rights.[71] Toku continues by maintaining that the entirely permissive nature of advancement and Delaware law governing the interpretation of corporate instruments means the term "officer" should be strictly construed to the definition in Toku's bylaws.[72]

Based on the record before me, I conclude there is a genuine issue of material fact whether Snipes was an officer of Toku such that he is entitled to advancement under Toku's bylaws. Neither side offered sufficient proof on whether Toku's board created Snipes' position as an officer and appointed him, either directly or by expressly delegating such authority to the CEO. Neither side offered conclusory evidence that officer, as used in Toku's bylaws, encompasses or excludes *de facto* officers. Neither side offered sufficient evidence of Toku's day-to-day operations and method for appointing officers which would allow me to determine if Toku routinely adhered to its bylaws or,

---

[70] Tr. 13.

[71] Tr. 19–20.

[72] *See* Tr. 11–15.

instead, routinely ignored corporate formalities when placing individuals in officer or subsidiary officer roles. I thus conclude an issue of material fact exists as to whether Snipes' is an officer under Toku's bylaws that is necessary to determine his entitlement to advancement. Therefore, I deny the parties' cross motions for summary judgment.[73]

### III. CONCLUSION

For the reasons explained above, I deny the parties' cross-motions for summary judgment. This is a Report under Court of Chancery Rule 144. It is not a "final entitlement decision" so it is not subject to expedited exceptions under the Chancellor's assignment letter,[74] and exceptions are thus stayed pending a final entitlement decision. I ask the parties to confer and submit a proposed scheduling order to bring the entitlement issue to a prompt and final decision.

---

[73] Because I conclude I cannot grant summary judgment on Snipes' officer status, I do not address the parties' other contentions.

[74] Dkt. 5 at 2.